OPINION
Defendant-Appellant, Glynela Strothers, appeals from her conviction and sentence for possession of crack cocaine in an amount less than one gram. After her motion to suppress was overruled, Strothers pled no contest to the charge and was found guilty. She was then sentenced to nine months in the Ohio Reformatory for Women. On appeal, Strothers raises the following single assignment of error:
 I. A consent to enter is not equivalent to consent to search and a warrantless search conducted without probable cause or consent is an illegal search under the Fourth Amendment.
Upon consideration, we find the assignment of error without merit and will affirm the trial court's judgment.
As a preliminary point, we note that the sole witness at the suppression hearing was Dayton Police Officer, Steve Bergman, who was the arresting officer. Bergman testified that on January 20, 2000, he and several other officers responded to a complaint about drug dealing which came in through a City of Dayton Police Department "complaint hotline." Normally, when complaints are made to the hotline, the City sends officers to do a "knock and advise." The purpose of the procedure is to find out if the complaint has any validity. Specifically, officers "knock" on the door and "advise" residents that a complaint has been made. Bergman indicated that this procedure is used because there is no reason to get search warrants for bogus complaints.
The complaint involved apartment A at 637 Corwin St., in Dayton, Ohio. Police had received previous complaints of drug dealing at this particular apartment building. Before going to apartment A, the police contacted Shawn Neville, the owner of the building. Neville then went with police to the apartment. When the police knocked, Kelly Larman answered the door. Larman was not the tenant, but was house-sitting for the tenant, who was in jail. After being told that the officers were there on a drug complaint, Larman allowed the officers to come into the kitchen.
The kitchen opened onto another area of the apartment. While two officers were speaking with Larman, another officer noticed a man go quickly past the open doorway. For safety purposes, Bergman and other officers went into the next room. When Bergman entered that room, he saw the man who had gone by the opening, the defendant, Glynela Strothers, and two other people. On a table, Bergman also saw crack pipes and a bag that looked like it contained crack cocaine.
Bergman testified that the officers could not assign culpability for the drug paraphernalia to any particular person because the paraphernalia was on the table. However, they did have grounds for a nuisance complaint. As a result, the officers began taking information so the occupants could be checked for outstanding warrants. At that time, Bergman called for Strothers to come over. When Strothers was about a foot away, Bergman noticed a plastic baggie sticking out of the pocket of her sweat-jacket. The pocket was loose, and Bergman looked inside, using his flashlight. Bergman saw what looked like crack cocaine in the baggie. The pocket was four or five inches deep. Bergman then pulled the baggie out. At that time, he saw two more rocks of crack and removed them also.
The baggie did not test positive for crack, but the rocks did test positive. Strothers was then arrested and was charged, as we said, with possession of crack cocaine.
Strothers contends that the motion to suppress should have been granted because the officers exceeded the scope of their consent to enter by forcing their way into the other room of the apartment. According to Strothers, this "forced entry" prevents the State from relying on the "plain view" doctrine to justify the warrantless seizure of the cocaine. Additionally, Strothers claims the "knock and advise" tactic is nothing more than a police ruse for circumventing the Fourth Amendment warrant requirement.
The following test is used to validate a law enforcement officer's warrantless seizure of an object in plain view:
 (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed, (2) the officer has a lawful right of access to the object, and (3) the incriminating character of the object is immediately apparent.
State v. Scott M. (1999), 135 Ohio App.3d 253, 261, citing Horton v.California (1990), 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308,110 L.Ed.2d 112, 122-123.
In the present case, the police officers lawfully entered the kitchen of the apartment, based on consent from the house-sitter. Because the officers came in response to a drug complaint, they were also entitled to enter the next room when they saw a man pass quickly by the doorway. Specifically, for all the officers knew, the man could have been retrieving a weapon. The dangers inherent in drug investigations are well known and need no elaborate description here. We do not think officers act unlawfully when they take reasonable steps to assure their own safety.
When the officers lawfully entered the room, they saw drug paraphernalia in plain view on the table. While investigating that matter, Officer Bergman called the Defendant over to ask her for information. When he did, he saw a baggie sticking out of her pocket. At the time, Bergman had a lawful right of access to the object, i.e., he saw the same thing that anyone in his position could have seen. In this regard, we note that Strothers admitted in the trial court that Officer Bergman had the right to remove the baggie and field test it. However, what Strothers contested was Bergman's search beyond that point and his use of a flashlight. This is in contrast to Strothers' position on appeal, i.e., Strothers now complains about the fact that the officers unlawfully "forced" their way into the room.
In any event, we think Bergman appropriately proceeded further after he first saw the plastic baggie. The requirement that the incriminating nature of the object be immediately apparent has been described as a probable cause requirement. State v. Willoughby (1992), 81 Ohio App.3d 562,569. In Willoughby, the court noted that:
 [p]robable cause is * * * a "flexible, common-sense standard." Therefore, the police may utilize their special knowledge or experience to justify their belief that probable cause existed."
 Id. (citations omitted).
In this regard, we note the following facts. First, Bergman was at the apartment in response to a drug complaint, and he had already seen drug paraphernalia, including a bag of what looked to be crack cocaine, on the table. Second, Bergman had been involved with perhaps a thousand drug arrests. Third, Bergman testified that he was aware that crack cocaine is commonly carried in baggies. And finally, Bergman saw a plastic baggie protruding from Strothers' pocket. In view of these facts, we think the incriminating nature of the baggie was immediately apparent. Compare State v. Israel (June 16, 2000), Montgomery App. No. 18066, unreported (finding probable cause to believe that baggies found on defendant contained crack cocaine when other drugs were seen in the same apartment). In Israel, we stressed that only probable cause, not more, is required for the police to seize objects in plain view. Id. at p. 2.
Under the circumstances, Bergman had a right to reach into Strothers' pocket and remove the baggie. In the course of doing so, and as part of the same transaction, Bergman discovered the other rocks of crack cocaine, which were then in plain view. Thus, when Bergman saw the rocks of crack cocaine, he had a lawful right of access to them. Their incriminating nature was also immediately apparent.
Furthermore, although Bergman used a flashlight to look into the pocket, we do not think that fact is significant, since Bergman took action before he saw what was in the pocket. Specifically, Bergman's original action was based on the evidence of drug activity, the bag of cocaine on the table, and the visible baggie protruding from Strothers' pocket. During the course of removing the exposed evidence, Bergman discovered other evidence below it. We do not think this was unreasonable.
Based on the above analysis, we find the seizure of the baggie and rocks of crack cocaine valid under the "plain view" exception to the Fourth Amendment warrant requirement. Accordingly, the trial court properly denied the motion to suppress.
As a final point, we reject Strothers' claim that the "knock and advise" procedure is simply a police ruse to avoid Fourth Amendment requirements. While that argument might be appropriate in some situations, we see nothing suspicious about the circumstances of this case. We do note that each case will be evaluated on its merits. Consequently, police officers should be aware of the potential risk whenever they choose not to obtain search warrants.
In light of the preceding discussion, the assignment of error is overruled, and the judgment of the trial court is affirmed.
WOLFF, J., and YOUNG, J., concur.